170 N.J. Super. 539 (1979)
407 A.2d 377
IRVINGTON POLICEMEN'S BENEVOLENT ASSOCIATION, LOCAL # 29, PETITIONER-RESPONDENT,
v.
TOWN OF IRVINGTON, RESPONDENT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1979.
Decided October 16, 1979.
*540 Before Judges ALLCORN, MORGAN and HORN.
*541 Mr. Jacob Green argued the cause for appellant (Ms. Ellen Harrison, on the brief).
Mr. Albert G. Kroll argued the cause for respondent (Messrs. Zazzali, Zazzali & Whipple, attorneys; Mr. Lawrence A. Whipple, Jr., on the brief).
Mr. Don Horowitz, Deputy General Counsel, argued the cause for Public Employment Relations Commission (Mr. Sidney H. Lehmann, General Counsel, attorney).
The opinion of the court was delivered by HORN, J.A.D.
The question in this case is whether a change of shift assignments of a municipal police department as promulgated by a municipality is mandatorily negotiable under the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-1 et seq. (act).
The Town of Irvington (town) appeals from a decision and order of the Public Employment Relations Commission (PERC) issued pursuant to PERC's primary jurisdiction under N.J.S.A. 34:13A-5.4(d) to resolve disputes between public employers and public employees concerning the scope of negotiations under said act.
PERC's jurisdiction was invoked by the Irvington Policemen's Benevolent Association, Local # 29 (PBA), which on May 5, 1978 filed a Petition for Scope of Negotiations Determination with PERC, requesting that PERC determine whether the town's decision to "initiate and implement a three shift work schedule which rotates around the clock on a bi-weekly basis" was a required subject for collective negotiations. The matter was determined by PERC on that petition and briefs submitted by PBA and the town. PERC's decision and order that the town was required to negotiate the change was issued on July 5, 1978. The town filed a notice of appeal on August 22, 1978. On this appeal, in addition to the town and PBA, PERC has also filed a brief and argued the issue orally.
*542 PERC did not hold an evidentiary hearing on the scope question, apparently because, as stated by it in its written decision and order, the essential facts were not contested. However, its recital of the uncontested facts merely includes, as we summarize same, a statement that the town desired to "change shift assignments so that all officers in the Patrol Division work on full rotating around the clock shifts," biweekly, from the former practice whereby approximately one-third of the officers worked the midnight shift on a steady, nonrotating basis and the other officers worked alternating shifts biweekly.
However, in the brief filed with us the town not only recites the earlier history of the dispute but also asserts the reasons for the desired change. We do not find this history to have been contradicted by either PERC or PBA. We reproduce the pertinent part of said history:
Several years ago a fixed evening shift was instituted on a trial basis for Officers in the Radio Patrol Division of the Irvington Police Department. Before that time, all Officers and their Superior Officers had been on three rotating shifts. After the change, the Superior Officers continued on a rotating shift schedule. Contrary to expectations, the change to an evening fixed shift did not enhance departmental efficiency, but rather, in the opinion of the Chief and his staff, diminished it. As an example, Superior Officers complained that they were not able to enforce discipline on a continuing basis because their rotating schedule did not enable them to supervise Patrol Officers on the fixed evening shift for more than a short period of time. The decision was made, at least as early as 1975, to put the entire Patrol Division on a rotating shift schedule in order to increase departmental efficiency.
In their counterstatement of the facts, PERC and PBA note that the issue (of rotating shifts) had been negotiated without objection in the past. Also, "Thus the dispute before PERC in the scope of negotiations proceeding is whether the change * * was a required subject of collective negotiations."
We pause to mention at this point that when PERC decided the scope question in this case it had not had the benefit of our Supreme Court's opinions which were rendered in Ridgefield Park Ed. Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144 (1978); *543 State v. State Supervisory Employees Ass'n, 78 N.J. 54 (1978); Galloway Tp. Bd. of Ed. v. Galloway Tp. Ed. Ass'n, 78 N.J. 25 (1978), and Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., 78 N.J. 1 (1978), as to which we refer below. In any event, PERC and PBA have since reviewed these opinions and at oral argument they persist in their contention that the projected issue was and is mandatorily negotiable.
We deduce that PERC held that the issue was negotiable, either compulsorily or permissibly, because, as is stated by PERC and PBA, it had been the subject of negotiation in prior years. If this deduction is correct, that is the reason for PERC's further assumption that the only issue really was whether the proposed change constituted a change in "term or condition" of employment. It also explains why its opinion in part read: "* * * we are only concerned with the abstract issue of the negotiability of the disputed subject" and failed to deal with the question which underlies the negotiability issue in this case, i.e., was the disputed change one which "intimately and directly affect[ed] the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of governmental policy." State v. State Supervisory Employees Ass'n, supra 78 N.J. at 67, Dunellen Bd. of Ed. v. Dunellen Ed. Ass'n, 64 N.J. 17 (1973).
In Ridgefield Park Ed. Ass'n, supra, 78 N.J. at 162, the Supreme Court removed any doubt that a subject was either mandatorily negotiable or it was nonnegotiable  that there is no middle category of permissive negotiability as the result of the parties' past practices, customs or volition. See also, In re Maywood Bd. of Ed., 168 N.J. Super. 45, 56-58 (App.Div. 1979), certif. den. 81 N.J. 292 (1979).
Put another way, the fundamental issue before us, then, is whether the change of shifts as directed by the town through its police chief is a term or condition as to which mandatory *544 negotiation would significantly interfere with the exercise of the town's managerial prerogative. As indicated hereinafter, the issue must also take into consideration a vital, and probably the most important, aspect  whether compulsory negotiation would be inimical to the public welfare.
As stated in Dunellen, supra, 64 N.J. at 25, "The lines between the negotiable and the nonnegotiable will often be shadowy." Management responsibilities were not expected to be abdicated as the result of the passage of the act. Ibid.
In passing we observe that, in addition to removing from mandatory negotiation those terms and conditions which significantly interfere with the exercise of inherent management prerogatives, those terms and conditions which statutes and lawful administrative regulations have preempted or otherwise indicated are not to be negotiated are also free of that process. State Supervisory Employees Ass'n supra.
Thus, negotiation of any term or condition as to which negotiation would be detrimental or injurious to the public welfare is also forbidden. Ridgefield Park Ed. Ass'n, supra, 78 N.J. at 163-166; Galloway Tp. Bd. of d.v. Galloway Tp. Ed. Ass'n, and Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., all supra.
In the light of these guidelines it becomes more apparent why the lines between the negotiable and the nonnegotiable are so nebulous and also why each case must be decided upon its own particular facts on a case-by-case basis. Englewood Bd. of Ed. v. Englewood Teachers, 64 N.J. 1, 7 (1973).
PERC asserts that its determination in the instant case that the change was mandatorily negotiable is entitled to be treated by us as presumptively correct, and that said determination should be accorded deference when its expertise is implicated in the decision. State Supervisory Employees Ass'n, supra, 78 N.J. at 83-84. No doubt a determination of PERC is ordinarily entitled to be regarded presumptively as reasonable and, *545 unless clearly arbitrary or capricious, should be affirmed. In re Application of Saddle River, 71 N.J. 14, 24 (1976); State v. Prof. Ass'n of N.J., Dept. of Ed., 64 N.J. 231, 258-259 (1974).
As already noted, PERC's determination was not the result of a fact-finding process. No evidence was produced before it. In reaching its conclusion it relied almost completely on its asserted expertise. However, its expertise in determining what is or is not a term or condition of employment is not the same expertise which is to be applied to a determination of whether a term or condition is negotiable. In fact, we are unable to ascribe to PERC on this record any expertise in the operation of a municipal police department or whether the issue involved in this case is negotiable under the thesis that it interferes with a managerial prerogative. The need for control of a police department as an inherent and necessary managerial prerogative is the very foundation for determining the negotiability of the proposed action of the police chief.[1] Also, as we have observed, PERC had not had the benefit of our Supreme Court's holdings in the cases decided after PERC's decision and order.
In the instant case PERC ignored the town's plea that the change was basic to the direction and functioning of the police department and that the requirement of mandatory negotiation impeded the police chief in his efforts to increase efficiency and to enforce discipline.
We feel that we need not remand for a more complete record in view of the apparent acceptance by PERC and PBA of the town's statements as contained in its brief and in the order of the chief of police.[2] Moreover, we judicially notice that the *546 role of the police in every community has always been of extreme importance to our social well-being. A police officer has been referred to as "a special kind of public employee." Moorestown Tp. v. Armstrong, 89 N.J. Super. 560, 566 (App.Div. 1965), certif. den. 47 N.J. 80 (1966). In Caronia v. Civil Service Comm'n, 6 N.J. Super. 275 (App.Div. 1950), it was said:
... The regulation of the police force by assignment of its members to particular duties, according to the requirements of the service and the special fitness of the individual members for these duties, must certainly be left to the discretion of the appointing authority, if they are to have any control or any liberty to act for the promotion of the efficiency of their department. McManus v. Newark, 49 N.J.L. 175 (Sup.Ct. 1886); Gutheil v. Nelson, 86 N.J.L. 1 (Sup.Ct. 1914); affirmed, 87 N.J.L. 691 (E. & A. 1915). [at 279]
See also, Jamesburg v. Hubbs, 18 N.J. Super. 5, 9 (App.Div. 1952); Newark v. Massey, 93 N.J. Super. 317, 323 (App.Div. 1967).
PERC's decision in the instant case could completely block the promulgation of the rotating shift plan of the police chief. It would confer upon an arbitrator, albeit a stranger to the municipality, the decision which rightfully belongs to the town. We cannot conceive that the act was intended to effect such a disastrous consequence in the case of police departments.
We cannot agree with PERC, as argued before us, that Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., supra, is a controlling case. In this obscure area of what constitutes a managerial prerogative, the importance of managing a police department cannot be equated with the need of a board of education to unilaterally fix the working hours of its secretaries.
PERC also relies upon its earlier opinion in In re Northfield Tp., PERC No. 78-82, 4 N.J.PER. (1978). We note in that case *547 that the city conceded that work schedules were mandatorily negotiable. PERC did not, in Northfield, have to decide whether the fixing of work schedules was compulsorily negotiable. We are not bound by PERC's earlier opinion nor by the fact that the municipality in that case conceded the issue.
Nor are we persuaded by PERC's and P.B.A.'s contentions that we should follow State Emp. Ass'n, etc. v. Board of Trustees, N.H., 388 A.2d 203 (Sup.Ct. 1978). In that case the employees were described as "certain prison employees." The Supreme Court of New Hampshire merely directed that "the parties ... negotiate over the effects [impact?] of the shift rotation plan [and] negotiate prior to any further changes." (Emphasis supplied.) Apparently the right to direct the shift change was not contested. In our own State, if a term or condition is not mandatorily negotiable, the impact of a change is also nonnegotiable. In re Maywood Bd. of Ed., supra.
In view of the foregoing, the order of PERC under review is reversed.
NOTES
[1] N.J.S.A. 40A:14-118 provides that the governing body may "provide for the ... regulation and control ... and prescribe [the] powers, functions and duties and ... promulgate rules and regulations for the government of the [police] department...."
[2] The order of the police chief stated as the reasons for the change: (1) to improve efficiency by rotating the hours of the superior officers with their men "thereby increasing continuity and consistency of supervision," and (2) to facilitate the training process by providing even and consistent training to all radio patrol personnel. Officers expressing hardship as the result of the change were offered the opportunity of having their cases reviewed and if found to exist "every reasonable attempt will be made to obtain relief."