192 N.J. Super. 71 (1983)
469 A.2d 80
BOROUGH OF ATLANTIC HIGHLANDS, PETITIONER-APPELLANT,
v.
ATLANTIC HIGHLANDS PBA LOCAL 242, RESPONDENT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued October 24, 1983.
Decided November 21, 1983.
*72 Before Judges BISCHOFF, PETRELLA and BRODY.
John Paul Dizzia argued the cause for appellant (John A. Meagher, attorney).
David Solomon argued the cause for respondent (Schneider, Cohen, Solomon & Di Marzio, attorneys).
Don Horowitz argued the cause for the Public Employment Relations Commission.
The opinion of the court was delivered by PETRELLA, J.A.D.
This case once again presents the difficult question of scope of negotiations in the context of policemen as public employees. The Borough of Atlantic Highlands (borough) appeals the determination *73 of the chairman[1] of the Public Employment Relations Commission (PERC) that contract proposals made by the Atlantic Highlands PBA Local 242 (PBA) with respect to shift schedules in the police department are mandatorily negotiable. We reverse.
There was no hearing before PERC. However, the facts are not disputed, and the positions of the parties were fully presented in their respective submissions to PERC. The borough has a police force of 14 members: a chief of police (chief) and a captain who are not members of the PBA (both would presumably qualify as "managerial executives" under N.J.S.A. 34:13A-3(f)), and 12 police officers who are members of the PBA, consisting of one detective-sergeant, three patrol-sergeants and eight patrolmen.
The chief has implemented a schedule for the police force and borough has consistently maintained over the years that scheduling in the police department is a managerial prerogative not subject to mandatory negotiations.[2]
Under the scheduling plan the chief is on regular duty from 8 a.m. to 4 p.m. The captain's normal working hours are from 2 p.m. to 10 p.m.; the detective-sergeant normally is on regular duty on the day shift or as required by the chief. The remaining force is divided into three rotating shifts providing 24-hour a day, seven-day a week coverage. Each officer works five days and is off duty two days of each week with shifts being rotated *74 each week. However, officers retain the same days off each week. Approximately every four months each officer's off-duty days are changed. The rotating shifts apparently consist of one sergeant and only two or three patrolmen to cover the entire borough during shifts other than the Monday to Friday day shift.[3] In order to maintain the ability to adjust manning requirements as the need arises, the work schedule provides for one officer on a rotating basis in ten-week cycles to work as a relief officer each week.
During negotiations for a new contract for the years 1982-1983, the PBA proposed a change in the work schedule from a five-days-on, two-days-off schedule to a repeating schedule of five days on, two days off, five days on, two days off and five days on, three days off. The proposal also included a requirement that there be 16 hours between shifts in all cases along with other incidental changes. The main focus was on the proposal that, in effect, every third week the PBA members would receive an additional day off. PBA argues that rather than 17 1/3 additional days a year off, this actually means only an additional 11 or 12 days off when vacations are considered. It is not at all clear from the record how that reduction is computed.
The parties ultimately reached an impasse in their negotiations on other matters as well as the rotating shift issue, and the mediation, fact-finding, arbitration provisions of N.J.S.A. 34:13A-16 were invoked.[4] The arbitrator did not adopt the *75 union's position with respect to a change in rotating shifts. There is no issue before us with respect to the arbitrator's award.
The borough asserts that the issue is nonnegotiable as a management prerogative and that the existence of a well-defined long-term schedule facilitates administration of the force and allows for appropriate supervision. The borough maintains that its scheduling plan provides the most efficient utilization of its existing manpower, permitting maintenance of satisfactory around-the-clock police protection at an efficient cost level. It insures a continuous adequate level of manning, including provision for relief personnel when there is an absence due to vacation, illness and unforeseen absenteeism. The borough also argues that its schedule allows for advance planning for attendance at training programs, seminars, court attendance and personal days with a minimum impact on its staffing requirements.
The borough criticizes the PBA's proposals as not improving the efficiency of the existing scheduling plan, but rather that it would negatively affect the current level of efficiency in the deployment of its police force. Under the PBA proposals the relief-man feature of the existing scheduling plan would be eliminated. The borough states in its brief:
Were this eleven man patrol force to be changed from a five-two rotating shift schedule to a five-two, five-two, five-three rotating shift schedule, the members of the force would work one hundred twenty-one (121) fewer eight hour shifts each year. Moreover, the rigidity of the Local's proposals would create gaps in the coverage necessary to fill vacancies for both known and unforeseeable absences from patrol duty. In order to cover this shortfall in police protection and coverage, the Borough would have to hire additional officers, or would have to make up this manning loss on an overtime basis.
Paterson Police PBA v. Paterson, 87 N.J. 78 (1981) stated: "negotiable terms and conditions of employment are those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement *76 would not significantly interfere with the exercise of inherent managerial prerogatives pertaining to the determination of governmental policy." At 83 (quoting State v. State Supervisory Employees Ass'n, 78 N.J. 54, 55, 67 (1978)). The criteria for determining negotiability were set forth in In re IFPTE Local 195 v. State, 88 N.J. 393 (1982):
To summarize, a subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions. [at 404-405]
The parties on this appeal take opposite positions on the applicability of Irvington PBA, Local 29 v. Irvington, 170 N.J. Super. 539 (App.Div. 1979), certif. den. 82 N.J. 296 (1980). There, the police department and union had, over a course of years, negotiated concerning rotating shifts. The PBA petitioned PERC for a determination that the rotating shifts were mandatorily negotiable and PERC held that they were. That determination was reversed by this court which noted that under State v. State Supervisory Employees, 78 N.J. 54, 67 (1978) and Ridgefield Park Education Ass'n v. Ridgefield Park Bd. of Ed., 78 N.J. 144 (1978), the key to the issue was whether negotiations over a shift change would interfere with various discretionary and managerial prerogatives in police operations.[5]
The special position of policemen was noted in concluding that shift changes were not mandatorily negotiable:
Thus, negotiation of any term or condition as to which negotiation would be detrimental or injurious to the public welfare is also forbidden. Ridgefield Park Ed. Ass'n, supra, 78 N.J. at 163-166; Galloway Tp. Bd. of Ed. v. Galloway Tp. *77 Ed. Ass'n [78 N.J. 25 (1978)] and Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec. [78 N.J. 1 (1978)] all supra.

In the light of these guidelines it becomes more apparent why the lines between the negotiable and the nonnegotiable are so nebulous and also why each case must be decided upon its own particular facts on a case-by-case basis. Englewood Bd. of Ed. v. Englewood Teachers, 64 N.J. 1, 7 (1973). [170 N.J. Super. at 544]
The borough argues that Irvington applies here and supports its position of nonnegotiability. The PBA argues that there are differences in the factual context of the Irvington case and that there is no argument here, as in Irvington, that the work-shift proposal will lead to serious discipline problems. In concluding in favor of negotiability PERC had relied on In re IFPTE, Local 195 v. State, supra, 88 N.J. at 393 in which a contractual clause in the engineers' contract mandating a five-day work week which could be changed according to operational needs was held negotiable. However, the Supreme Court in In re IFPTE observed that the formation of an overall calendar was not at issue, and thus it declared the issue negotiable. The court observed that negotiation in that instance would not significantly interfere with determination of governmental policy, "particularly since the term applies only `[w]here practicable.'" Id. at 412. The Appellate Division had distinguished Irvington in considering the In re IFPTE case because that case involved policemen. Irvington PBA, Local 29 v. Irvington, supra 170 N.J. Super. at 545.
We are of the opinion that the fixing of the overall work schedule for the police force of the borough is a managerial prerogative and a policy not subject to mandatory negotiations. For the work schedule of the police to be subject to mandatory negotiation and potentially the subject of an arbitration proceeding would be an intrusion on the exercise of the express and inherent police power functions of the municipality and would significantly interfere with the exercise of the inherent managerial prerogatives necessary to the proper operation of a police force. As noted in In re IFPTE, Local 195 v. State, supra:

*78 When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions. [88 N.J. at 405]
Paterson Police PBA v. Paterson, supra recognized the potential for permissive categories of negotiation when dealing with police or firemen. However, the court commented on the nonnegotiability of managerial prerogatives:
If [the subject to be negotiated] places substantial limitations on government's policy-making powers, the item must always remain within managerial prerogatives and cannot be bargained away. However, if these governmental powers remain essentially unfettered by agreement on that item, then it is permissively negotiable. [87 N.J. at 92-93]
We conclude that the reasoning in Irvington PBA Local 29 v. Irvington, supra applies here and that it is the function of the municipality, through its chief of police, to determine the most effective coverage for police protection in the borough.
PERC's decision in the instant case could completely block the promulgation of the rotating shift plan of the police chief. It would confer upon an arbitrator, albeit a stranger to the municipality, the decision which rightfully belongs to the town. We cannot conceive that the act was intended to effect such a disastrous consequence in the case of police departments.
We cannot agree with PERC, as argued before us, that Galloway Tp. Bd. of Ed. v. Galloway Tp. Ass'n of Ed. Sec., supra, is a controlling case. In this obscure area of what constitutes a managerial prerogative, the importance of managing a police department cannot be equated with the need of a board of education to unilaterally fix the working hours of its secretaries. [170 N.J. Super. at 546.]
The relatively small size of the municipality and its police force must not be forgotten here. The police department not only performs a deterrent and enforcement function by its presence in the municipality with respect to violations of the criminal laws, but also regarding violations of the motor vehicle laws and their enforcement. Id. at 545-546. Neither a court nor an arbitrator should substitute its judgment for the duly authorized police authorities.[6] This function is not delegable and is not negotiable.
*79 In our view the rationale of Irvington PBA is buttressed by our Supreme Court's expressions in Paterson Police PBA v. Paterson, supra where it was stated:
Obviously, a municipality should also retain the discretion to forego for economic reasons the filling of vacancies by promotions.
Municipal decisions about how to organize and deploy their police forces to comply with economic needs are unquestionably policy decisions and affect the public welfare. [87 N.J. at 98]
Just because economic considerations are involved or working conditions are affected does not tilt the scale in favor of negotiability. See In re IFPTE, Local 195 v. State, supra 88 N.J. at 409; State v. State Supervisory Employees Ass'n, supra 78 N.J. at 88.
The final determination of PERC is reversed. The issue of shift changes is nonnegotiable.
NOTES
[1] PERC initially delegated authority to its chairman to decide the scope of negotiability issue in this case. See N.J.S.A. 34:13A-6(f) and (g) and the implementing regulations, N.J.A.C. 19:10-1.1 and 19:10-5.1.

PERC consists of a seven-person commission established by N.J.S.A. 34:13A-5.2. On a motion for reconsideration, the commission unanimously voted (7-0) for the decision.
[2] The contract in effect for the two-year period which ended December 31, 1981 provided:

In the event of a court decision rendering scheduling a negotiable item the Borough agrees to enter into negotiations with the PBA on this matter.
[3] We are not including the chief and captain when discussing such coverage. There are also, apparently, four civilian dispatchers according to the interest arbitrator's decision which we received after granting the borough's motion to supplement the record.
[4] The compulsory interest arbitration award was entered on August 4, 1983 which was subsequent to the filing of the appeal in this matter. The arbitrator under the last-offer, best-offer approach (which he strongly criticized) accepted the borough's position and entered an award based on the borough's final offer because he found the shift proposal by the PBA too restrictive. We have declined to consider the issue of mootness because of the nature of the negotiability issue posited and the public importance of proper police scheduling. Clark v. Degnan, 83 N.J. 393, 397 (1980); De Rose v. Byrne, 139 N.J. Super. 132 (App.Div. 1976).
[5] We note that college calendars were held not to be a proper subject of mandatory negotiations in Burlington County College Faculty Ass'n v. Burlington County College Bd. of Trustees, 64 N.J. 10 (1973).
[6] The borough also argues that the nonnegotiability of the scheduling of shifts is reinforced by N.J.S.A. 40A:14-118 which codifies the authority of the chief of police to maintain control of the police force in the municipality. In light of our determination herein, we need not address that issue.