215 N.J. Super. 108 (1987)
521 A.2d 369
IN THE MATTER OF TOWNSHIP OF MT. LAUREL, PETITIONER-APPELLANT, AND MT. LAUREL TOWNSHIP POLICE OFFICERS ASSOCIATION, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted November 25, 1986.
Decided February 11, 1987.
*109 Before Judges BRODY, LONG and D'ANNUNZIO.
*110 Capehart & Scatchard, P.A. attorneys for appellant (Alan R. Schmoll, of counsel; Joseph F. Betley, on the brief).
Colflesh & Burris, attorneys for respondent (Ralph Henry Colflesh, Jr., of counsel; Martin Casey Mooney, Sr., on the brief).
Robert E. Anderson, General Counsel, Public Employment Relations Commission.
The opinion of the court was delivered by LONG, J.A.D.
The sole question presented on this appeal is whether the Public Employment Relations Commission (PERC) properly determined that the work hours and work schedule proposals of the respondent Mt. Laurel Township Police Officers Association (Association) are mandatorily negotiable.
The Township of Mt. Laurel (Mt. Laurel) is a New Jersey public employer as defined by N.J.S.A. 34:13A-3(c). The Association is the labor representative of the majority of Mt. Laurel's nonsupervisory police officers. N.J.S.A. 34:13A-3(e). At the time this dispute arose, there were twenty-four (24) patrol positions in the Patrol Bureau of Mt. Laurel's police department, consisting of sixteen (16) patrolmen, four (4) corporals, and four (4) sergeants. The twenty-four individuals who occupied these positions were represented by the Association. Mt. Laurel and the Association were parties to a collective bargaining agreement which was effective from January 1, 1982, through December 31, 1984. Contemplating the expiration of the agreement, they entered into negotiations on a successor contract and soon became embroiled in a dispute over the negotiability of Article X of the existing agreement which provided:
The parties understand and agree that the standard weekly work schedule for employees covered by this Agreement requires employees' services continually throughout the seven (7) day week.
In the Patrol bureau, the work week will be Five (5) days on, followed by Two (2) days off; Five (5) days on, followed by Two (2) days off; Five (5) days on, *111 followed by Two (2) days off; Five (5) days on followed by One (1) day off. It is agreed that the Fifteen (15) days accumulated working days will be given off for the members three (3) times a year. These days will be scheduled as to fall on the members of the day shift.
There is no dispute as to the negotiability of Article X's first paragraph; however, Mt. Laurel sought to delete the second paragraph of that provision, asserting that the scheduling of work for the police force is not subject to mandatory negotiations. In opposition, the Association sought to retain the second paragraph of Article X, with the following addition:
The normal work week shall consist of forty (40) hours of work; the normal work day shall consist of eight (8) hours of work. Tours of duty shall be 12:00 Midnight to 8:00 AM., 8:00 A.M. to 4:00 P.M., 4:00 P.M. to 12:00 Midnight.
This language would have reduced to writing the work schedule and arrangement already in effect in the Mt. Laurel Patrol Bureau since 1981.
Mt. Laurel rejected this proposal and filed this petition for a "scope of negotiations" determination on the negotiability of Article X's existing and proposed subject matter. After a hearing, PERC found three areas to be subject to mandatory negotiation: (1) the actual number of hours a patrol officer will work during a given work week and work day (8 hour day and 40 hour week proposal), (2) the work schedule or work cycle for patrol officers (5-2, 5-2, 5-2, 5-1), and (3) the maintenance of three eight-hour tours of duty and their starting and ending times. This appeal ensued. We affirm.
In New Jersey, public employees have a constitutional right to organize, to choose their representatives, and to petition their public employers for redress of grievances. N.J. Const. (1947), Art. I, par. 19; In re IFPTE Local 195 v. State, 88 N.J. 393, 401 (1982). The statutory framework embodying this constitutional right to collective negotiations is the New Jersey Employer-Employee Relations Act (Act), N.J.S.A. 34:13A-1 et seq. Under the Act, collective negotiations are mandated with respect to "terms and conditions of employment" (N.J.S.A. 34:13A-5.3) which have been defined as

*112 ... those matters which intimately and directly affect the work and welfare of public employees and on which negotiated agreement would not significantly interfere with the exercise of inherent management prerogatives pertaining to the determination of government policy. [State v. State Supervisory Employees Ass'n, 78 N.J. 54, 67 (1978) (citations omitted)]
In effect, two categories of subjects were initially created under the Act: mandatorily negotiable "terms and conditions of employment" and nonnegotiable management prerogatives.[1]Paterson Police PBA v. Paterson, 87 N.J. 78, 91 (1981). The Association claims that its work hours and work schedule proposals fall in the former category; Mt. Laurel argues that they fall in the latter.
The Supreme Court provided a general framework for analysis of such issues in In re IFPTE Local 195 v. State, 88 N.J. 393 (1982):
To summarize, a subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions. [at 404-405]
This framework is essentially identical to that outlined by the Supreme Court for police and firefighters' "scope of negotiability" determinations in Paterson Police PBA v. Paterson, supra.
Mt. Laurel does not argue that the issues in this case were preempted by statute or regulation. Nor does it contend that these issues are not terms and conditions of employment intimately and directly affecting the work and welfare of police officers. Thus, the first and second items in the Local 195 and Paterson Police PBA tests are not in dispute. Rather, Mt. *113 Laurel argues, as it did before PERC, that the establishment of police work schedules is a nonnegotiable exercise of its managerial prerogative to determine government policy pursuant to the holding in Bor. of Atlantic Highlands v. Atlantic Highlands PBA Local 242, 192 N.J. Super. 71 (App.Div. 1983), certif. den., 96 N.J. 293 (1984).
In Atlantic Highlands, supra, PERC determined that a police union's proposals to add one day off to a rotating shift and to require at least 16 hours between tours of duty were mandatorily negotiable subjects. Id. at 73-74. The public employer appealed to this court claiming that the size of its force (an 11 member patrol) was such that the proposals would create gaps in coverage and require either the hiring of more police or the payment of more overtime thus impacting negatively on the overall efficiency of the department's deployment operation. We reversed on these facts stating:
... the fixing of the overall work schedule for the police force of the borough is a managerial prerogative and a policy not subject to mandatory negotiations. For the work schedule of the police to be subject to mandatory negotiation and potentially the subject of an arbitration proceeding would be an intrusion on the exercise of the express and inherent police power functions of the municipality and would significantly interfere with the exercise of the inherent managerial prerogatives necessary to the proper operation of a police force. [Atlantic Highlands, supra, 192 N.J. Super. at 77]
Mt. Laurel reads this holding broadly as establishing that police work schedules are per se excluded from the scope of negotiations and that where they are at issue, the Local 195 balancing test is unnecessary.
We recognize that the rather broad and imprecise language used by the court in Atlantic Highlands can be construed as supporting Mt. Laurel's position. If that were the only viable reading of the case, we would feel constrained to part company with it. In our view, Mt. Laurel's reading of Atlantic Highlands as establishing a per se rule of exclusion flies directly in the face of the Supreme Court's enunciated position in Local 195 and Paterson Police as to how negotiability issues including "rates of pay and working hours" are to be *114 determined. Local 195, supra, 88 N.J. at 403 (emphasis added). Reflecting the definition of negotiable terms and conditions of employment in N.J.S.A. 34:13A-5.3, those cases unequivocally require that the government's interest in its managerial prerogative to determine policy be balanced against the interests of the public employees. In striking the balance, it is not enough to say either that the subject at issue involves a managerial prerogative or that it intimately affects the employees' work and welfare. These things can be said of nearly every employment related subject. The critical issue is whether a negotiated agreement will "significantly interfere" with the managerial prerogative to determine government "policy." If so, then the government interest will be "dominant" over that of the employees and the issue will not be negotiable. This is a fact intensive determination which must be fine tuned to the details of each case.
Thus, in Atlantic Highlands, we held that the public employers' uncontroverted factual claims of diminished efficiency in its tiny police force, including projected gaps in coverage and higher expenditures for police protection established that a negotiated agreement would significantly impact on the determination of governmental policy. Likewise in Irvington PBA Local # 29 v. Town of Irvington, 170 N.J. Super. 539 (App.Div. 1979), certif. den. 82 N.J. 296 (1980), where it was not disputed that the scheduling decision which was sought to be negotiated implicated diminished departmental efficiency, discipline problems, and questions as to the continuity and consistency of supervision by superior officers, we held that it involved a substantial interference in the government's right to make policy and thus dominated over the employees' interests.
As we see it, nothing in these decisions should be read as establishing a per se rule of exclusion for police scheduling issues. The most that can and should be said of them is that in each case the statutorily prescribed balance as articulated in Local 195 and Paterson Police was properly struck in favor of *115 the government employer. Indeed the court in Atlantic Highlands, citing the language of Irvington PBA Local # 29 v. Town of Irvington, supra, specifically recognized that the differing facts of each case should determine whether a disputed subject is mandatorily negotiable and that such a decision needs to be made on a case-by-case basis. Atlantic Highlands, supra, 192 N.J. Super. at 77. In substance, this principle is at the opposite end of the spectrum from a rule of automatic exclusion. Thus, in this case, PERC correctly determined that the Association's proposed schedule changes were not automatically prohibited from being the subject of mandatory negotiation but were subject to the Local 195 balancing test.
In carrying out its balancing function, PERC found that Mt. Laurel did not advance a single fact in support of its position but relied instead on Atlantic Highlands as an absolute bar to the negotiation of police work schedules. In our view, Mt. Laurel had a heavy burden in attempting to demonstrate its need to unilaterally determine police work hours given the posture of the case before PERC. The case was not in the apparent state of equipoise which is ordinarily found where an employee association proposes a new work schedule or seeks negotiation on an issue for the first time. In place in Mt. Laurel was a police work schedule which had been arrived at through negotiation in 1981 and which was included in a collective bargaining agreement. The Association's proposed schedule here, which Mt. Laurel claimed was not negotiable, would have memorialized the schedule in the old contract. Unlike the public employer in Atlantic Highlands and Irvington, Mt. Laurel expressed neither dissatisfaction with the in-place negotiated schedule nor any intention to change it. Thus, the burden which devolved upon Mt. Laurel to advance reasons in support of its need, from a policy making point of view, to unilaterally control police work hours was simply not met. PERC thus properly concluded that "no matter of significant managerial prerogatives has been placed on the scale to counterbalance the direct and intimate effect work schedules on *116 employees." This conclusion is based on findings which are supported by sufficient credible evidence on the record as a whole and we will not interfere with it.
Affirmed.
NOTES
[1] A third category was subsequently recognized by statutory amendment  permissively negotiable issues. N.J.S.A. 34:13A-16(b) and 16(f)(4). Neither party contends that this matter falls in the permissive category.