12 A.3d 214 (2011)
418 N.J. Super. 64
In the Matter of MORRIS COUNTY SHERIFF'S OFFICE and the County of Morris, Appellants,
v.
MORRIS COUNTY POLICEMEN'S BENEVOLENT ASSOCIATION, LOCAL 298, Respondent.
No. A-3174-09T3.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 2010.
Decided January 13, 2011.
*215 Stephen E. Trimboli argued the cause for appellants Morris County Sheriff's Office and the County of Morris (Knapp, Trimboli & Prusinowski, LLC, attorneys; Mr. Trimboli, of counsel and on the brief; Molly S. Marmion and Marissa Becker Ruggiero, Hackensack, on the brief).
Mary E. Hennessy-Shotter, Deputy General Counsel, argued the cause for respondent Public Employment Relations Commission (Ira W. Mintz, General Counsel, attorney; Ms. Hennessy-Shotter, on the brief).
Blake C. Width argued the cause for respondent Morris County Benevolent Association, Local 298 (Lindabury, McCormick, Estabrook & Cooper, P.C., attorneys; Donald B. Ross, Jr., Westfield, of counsel and on the brief; Mr. Width, on the brief).
Before Judges AXELRAD, LIHOTZ, and J.N. HARRIS.
The Opinion of the court was delivered by
JONATHAN N. HARRIS, J.A.D.
This case involves an attempt by a public employerthe Morris County Sheriff's Officeto eliminate previously-tolerated featherbedding, which effort was determined to be an unfair labor practice by the Public Employment Relations Commission (PERC). The disapproved solution, intended to eliminate an archaic work rule, sought a unilateral end to the long-standing employment practice that had permitted public employees who were assigned to posts that are normally nonoperational on weekends to nevertheless work those posts on nonoperational holidays and be paid a premium for the privilege. We reverse.
The Morris County Sheriff's Office and the County of Morris (collectively Morris) appeal from two orders of PERC that *216 enjoined the abolishment of holiday assignments to non-operational posts. These orders were entered in connection with the Morris County Policemen's Benevolent Association, Local 298's (PBA) charges of unfair labor practices against Morris, and coincidently in the midst of those parties' contemporaneous interest arbitration. PERC ruled that Morris was required "to cease and desist from changing terms and conditions during interest arbitration and to restore the status quo." PERC's rationale for this conclusion was based upon the statutory standstill provision applicable to interest arbitration proceedings provided in N.J.S.A. 34:13A-21:
During the pendency of proceedings before the arbitrator, existing wages, hours and other conditions of employment shall not be changed by action of either party without the consent of the other, any change in or of the public employer or employee representative notwithstanding; but a party may so consent without prejudice to his rights or position under this supplementary act.
Notwithstanding our respect for the experience and expertise of PERC, we do not subscribe to its literal view that the standstill provision trumps the continuation of pointless work procedures designed merely to pay workers for performing make-work tasks, or worse, for just showing up.

I.

A.
Morris operates the Morris County Correctional Facility (MCCF) in Morristown. The PBA represents all corrections officers employed in the MCCF. From the time PERC first received the PBA's allegations of unfair labor practices in 2008, through the initial summary judgment motion practice in 2009, Morris and the PBA were engaged in interest arbitration because their previous four-year collective negotiations agreement (CNA) had expired on December 31, 2006. According to PERC, an interest arbitrator was appointed on May 9, 2007, to create a successor agreement for the parties. We are told that the interest arbitration award was rendered on October 5, 2009, which created a new agreement for the succeeding four years. Confoundingly, the contractual provisions at the heart of this case remained unaffected by the award.
Morris operates the MCCF twenty-four hours a day, seven days a week. According to the CNA's "Article 23: Hours of Work-Week," "[t]he work week for all employees working at the [MCCF] shall consist of forty-two and one-half hours (42 ½) hours per seven (7) work days based on the current 5-2 day week." This translates into the routine of deploying employees to work five days on, then two days off, regardless of when a holiday occurs.
Pursuant to "Article 9: Holidays," all employees are paid for thirteen holidays enumerated in the agreement. Additionally, this article provides that employees who do not work on a holiday nevertheless "receive holiday pay computed at their regular straight-time hourly rate," and employees who do work any of the enumerated holidays receive in addition to their regular compensation, holiday pay "calculated at the employee's straight-time hourly rate of pay." In other words, employees who work on an enumerated holiday are paid double time for the day, whether their posts operate or do not operate on such holiday.
Finally, pursuant to "Article 11: Maintenance of Certain Practices," employees who are scheduled to work on a holiday may request the day off. The request must be made to the employee's supervisor *217 three days prior to the holiday requested and the request is subject to the supervisor being able to sufficiently cover the post during the tour of duty.
In 2008, in an effort to reduce the overall public expense of operating the MCCF, Undersheriff Ralph McGrane issued a four-page "Strategy for Controlling Overtime and Operational Expenses," to become effective on January 1, 2009 (the McGrane Strategy). The McGrane Strategy discontinued the practice of assigning employees on holidays to work posts that are closed on the weekend because "correctional facilities traditionally operate on holidays the same way as they do on weekends." Seventeen officer positions and twelve supervisory positions were directly identified as being affected by the McGrane Strategy.
According to the certification submitted to PERC by Morris in connection with its application to stay PERC's restoration of the status quo, the affected positions operate only on regular business days. Examples include: (1) transportation, which transports inmates to and from court; (2) court liaison, which conducts video hearings between the MCCF and court; (3) mailroom, which delivers inmate mail; (4) library, which is closed on holidays and weekends; and (5) records, which is closed when courts are closed. When officers who are assigned to these posts come to work on holidays, they are supposedly either given make-work assignments or sent to alternate posts.
McGrane also submitted a certification in support of Morris's motion for summary judgment. He stated that the intent behind the new policy was to decrease overtime expenditures because the Morris County budget had to be reduced. He expressly noted:
The provision in question in this matter, the elimination of discretionary overtime, was a staffing decision that I made in the best interests of the County. The posts that are affected by this measure are, according to the terms of the provision, not operating on holidays. However, in the past, officers were allowed to man the posts on holidays and collect overtime pay. This is simply an inefficient allocation of county funds, and in these dire economic circumstances, it is a practice that must be ended. As such, I made the decision to end the practice, and exercised what I understood to be power that was within my discretion as Undersheriff, to make decisions related to staffing levels. This decision does not disallow officers from working constantly manned positions on holidays in order to earn overtime pay; it simply disallows officers from manning positions that need not be manned on those days.
Said differently, Morris contends that the closing of non-essential posts on holidays implicates its non-negotiable managerial prerogative to determine staffing levels.
Notwithstanding the apparent salutary purposes that animated the McGrane Strategy, the PBA perceived the action as an abrogation of the CNA's provision giving employees, not management, the right to decide when to request time off on holidays. Claiming that the McGrane Strategy reversed more than a decade's practice by "permit[ting] a supervisor to mandate a change in the officer's normal work schedule," the PBA pursued unfair labor practice charges. In addition, the PBA objected to the manner of implementing the policy change"unilaterally and without negotiations with the PBA"and its timing, while Morris and the PBA were parties to a then-pending interest arbitration proceeding.

B.
On October 7, 2008, the PBA filed claims of unfair practices against Morris with *218 PERC alleging violations of N.J.S.A. 34:13A-5.4(a)(1), -5.4(a)(3), -5.4(a)(5), and -5.4(a)(7) by "attempt[ing] to alter unilaterally and without prior negotiations a clear and unequivocal rule governing working conditions, and was announced during the pendency of an interest arbitration proceeding." The alteration at issue was the directive that "the practice of staff members who are assigned to positions that are normally closed on the weekend will no longer be permitted to work those positions on a holiday."
PERC elected to issue a complaint based upon N.J.S.A. 34:13A-5.4(a)(1) and -5.4(a)(5) only. In response to cross-motions for summary judgment, PERC issued an opinion and order on September 24, 2009, denying Morris's motion to dismiss the complaint, and partly granting the PBA's cross-motion on the ground that Morris had indisputably "changed a term and condition of employment during the pendency of proceedings before an interest arbitration." Morris's motion for reconsideration was denied on February 25, 2010.

C.
PERC addressed Morris's argument that the schedule change was a managerial prerogative to determine staffing levels. Relying upon N.J.S.A. 34:13A-5.3, it noted that a public employer is required "to negotiate before setting or changing mandatorily negotiable employment conditions" but that an employer can refuse to "negotiate before setting or changing permissively negotiable employment conditions."
After examining and distinguishing several of its prior decisions, PERC concluded that the primary goal of the McGrane Strategy was to cut costs, and that this goal was effectuated by directing officers not to come to work on a regularly scheduled work day. Thus, it concluded that the McGrane Strategy "not only changed officers' work schedules, but appears to have changed their total annual compensation." Finding that Morris had not "demonstrated a particularized need to preserve or change the work schedule to support or implement a governmental policy determination, such as a need to improve supervision, enforce discipline, train rank-and-file officers, or align a unit's schedule with the time services are most needed," summary judgment was denied because "the change involved a mandatorily negotiable term and condition of employment."
PERC next addressed whether the McGrane Strategy repudiated the parties' contractual provision regarding compensation for working holidays, and whether the policy violated N.J.S.A. 34:13A-5.4(a)(5), prohibiting an employer from refusing to negotiate in good faith. In denying the PBA's summary judgment motion on this ground, PERC held that there was no repudiation of the CNA because that agreement "does not clearly prohibit the employer from requiring employees to take off a scheduled holiday."
However, PERC held that Morris "indisputably changed the practice of staff members who are assigned to positions that are normally closed on the weekend being permitted to work those positions on a holiday." This change was made during interest arbitration proceedings, in contravention of N.J.S.A. 34:13A-21, which prohibits changing conditions of employment during the pendency of such arbitration, and thus violated N.J.S.A. 34:13A-5.4(a)(5). Accordingly, summary judgment was granted in favor of the PBA, by which PERC required Morris to restore the status quo.
Morris moved for reconsideration arguing for the first time that summary judgment was not appropriate because there *219 existed a dispute of material fact whether the McGrane Strategy concerned non-negotiable minimum staffing issues. PERC rejected this argument, finding that there were no minimum staffing issues implicated, and therefore no extraordinary circumstances warranted its reconsideration. See N.J.A.C. 19:14-8.4 ("The movant shall specify the extraordinary circumstances warranting reconsideration and the pages of the record it relies on.").
Morris also asserted that a genuine issue of material fact existed as to whether Morris could successfully assert a defense to the unfair labor charge pursuant to the principles announced by PERC in In the Matter of N.J. Dept. of Human Servs., 10 NJPER 419 (1984) (holding that "a mere breach of contract is not, in itself, an unfair practice"). PERC found that this defense had not been asserted as part of the initial round of summary judgment motion practice, and it "would not consider an argument made for the first time in a motion for reconsideration." Notwithstanding the apparent waiver of this defense, PERC nevertheless found it was inapplicable because the PBA had alleged a repudiation of the contract, and a specific claim of repudiation can be sufficient to sustain an unfair labor practice, giving PERC the ability to fashion a remedy pursuant to N.J.S.A. 34:13A-5.4(a)(5).
Finally, PERC confirmed that summary judgment was granted to the PBA on the ground that the changed policy of holiday staffing contravened Morris's "obligation to maintain terms and conditions of employment" during interest arbitration proceedings. Accordingly, reconsideration was denied.

II.

A.
As a threshold matter, we reject the argument that because the interest arbitration proceedings that motivated PERC's determination are completed, there is no longer any remaining controversy between the parties. We are satisfied that the issues to be resolved in this appeal remain in disputeparticularly the finding that Morris committed an unfair labor practiceand thus there is genuine and tangible adversity between the parties. See Advance Elec. Co. v. Montgomery Twp. Bd. of Educ., 351 N.J.Super. 160, 166, 797 A.2d 216 (App.Div.), certif. denied, 174 N.J. 364, 807 A.2d 195 (2002). Moreover, issues concerning the standards and procedural requisites for modification of the emoluments of public employment appear to be of substantial importance to both parties, Gonzalez v. N.J. Prop. Liab. Ins. Guar. Ass'n, 412 N.J.Super. 406, 415-16, 991 A.2d 243 (App.Div.2010), and capable of repetition. State ex rel. C.V., 201 N.J. 281, 286, 990 A.2d 640 (2010). In any event, resolution of these issues may well be germane to the likely collateral consequence of future litigation between the parties. See Galloway Twp. Bd. of Educ. v. Galloway Twp. Educ. Ass'n., 78 N.J. 25, 48-49, 393 A.2d 218 (1978); Marjarum v. Twp. of Hamilton, 336 N.J.Super. 85, 97, 763 A.2d 796 (App.Div.2000). We therefore proceed to a discussion of the merits.

B.
Appellate courts "grant administrative agency action a `strong presumption of reasonableness.'" Aqua Beach Condo. Ass'n v. Dep't. of Cmty. Affairs, 186 N.J. 5, 16, 890 A.2d 922 (2006) (quoting Newark v. Natural Res. Council, 82 N.J. 530, 539, 414 A.2d 1304 (1980)). The scope of appellate review involving matters commended to the jurisdiction of PERC is the following:
We note initially that PERC is charged with administering the New *220 Jersey Employer-Employee Relations Act (Act), N.J.S.A. 34:13A-1 to -29, and its interpretation of the Act is entitled to substantial deference. N.J. Tpk. Auth. v. AFSCME, Council 73, 150 N.J. 331, 352 [696 A.2d 585] (1997). Appellate courts "`will not upset a State agency's determination in the absence of a showing that it was arbitrary, capricious or unreasonable, or that it lacked fair support in the evidence, or that it violated a legislative policy expressed or implicit in the governing statute.'" In re Camden County Prosecutor, 394 N.J.Super. 15, 22-23 [925 A.2d 63] (App.Div.2007) (quoting County of Gloucester v. Public Employment Relations Commission, 107 N.J.Super. 150, 156 [257 A.2d 712] (App.Div.1969), aff'd, 55 N.J. 333 [262 A.2d 1] (1970)). "Although an agency's `interpretation of the statute it is charged with administering ... is entitled to great weight,' ... [appellate courts] will not yield to PERC if its interpretation is `plainly unreasonable, contrary to the language of the Act, or subversive of the Legislature's intent.'" Id. at 23 [925 A.2d 63] (citations omitted).
PERC's interpretation of the law outside of its charge is entitled to "no special deference." Ibid. Moreover, deference is not afforded when PERC's interpretation gives a provision of the Act greater reach than the Legislature intended, N.J. Tpk. Auth., supra, 150 N.J. at 351-52 [696 A.2d 585], and PERC must follow judicial precedents interpreting the Act, In re Byram Twp. Bd. of Ed., 152 N.J.Super. 12, 22 [377 A.2d 745] (App.Div.1977).
[Comm. Workers of Am., Local 1034 v. N.J. State Policemen's Benev. Ass'n, Local 203, 412 N.J.Super. 286, 291, 989 A.2d 1267 (App.Div.2010).]
Moreover, in reviewing the decision of PERC, our review is restricted to three inquiries:
"(1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency bases its action; and (3) whether, in applying the legislative policy to the facts, the agency erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors."
[City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 567, 713 A.2d 472 (1998) (quoting In re Musick, 143 N.J. 206, 216, 670 A.2d 11 (1996)).]
"In the absence of constitutional concerns or countervailing expressions of legislative intent, [courts] apply a deferential standard of review to determinations made by PERC." Id. at 567, 713 A.2d 472. With these principles in mind, we approach the task of reviewing the parties' contentions through the lens of PERC's decision-making.

C.
Morris contends that the implementation of the McGrane Strategy does not require negotiation with the PBA, citing the New Jersey Supreme Court's fundamental three-pronged test for negotiability:
"[A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy."

*221 [City of Jersey City, supra, 154 N.J. at 568, 713 A.2d 472 (quoting In re Local 195, IFPTE v. State, 88 N.J. 393, 404-05, 443 A.2d 187 (1982)).]
Morris proposes that "[t]his case turns on the third criterion for determining mandatory negotiability." We agree that item three is the linchpin.
"Questions concerning whether subjects are mandatorily negotiable should be made on a case-by-case basis." Troy v. Rutgers, 168 N.J. 354, 383, 774 A.2d 476 (2001). The determination whether a negotiated agreement would significantly interfere with the determination of governmental policy, requires the striking of a balance between the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions. In re Local 195, IFPTE, supra, 88 N.J. at 404-05, 443 A.2d 187.
While recognizing that public employees, like private ones, have a legitimate interest in engaging in collective negotiations about issues that affect the terms and conditions of employment, "what distinguishes the State from private employers is the unique responsibility to make and implement public policy," which is "properly decided, not by negotiation and arbitration, but by the political process." Id. at 401-02, 443 A.2d 187. As a consequence, the Court stated that a legal distinction is drawn between "`mandatorily negotiable terms and conditions of employment and non-negotiable matters of governmental policy.'" Id. at 402, 443 A.2d 187 (quoting Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 162, 393 A.2d 278 (1978)).
Morris posits that the governmental policy at stake is the Sheriff's determination "not to staff on holidays certain specific duty posts that, by their very nature, have no function to perform on holidays." Put another way, Morris contends that "[t]he predominant concern in this case is the Sheriff's determination of the number of employees needed to work on a particular shift or in particular circumstances."
The Supreme Court has held that "the substantive decision to transfer or reassign an employee is preeminently a policy determination." In re Local 195, IFPTE, supra, 88 N.J. at 417, 443 A.2d 187. "[D]ecisions to reduce the work force for economy or efficiency are non-negotiable subjects." Id. at 408, 443 A.2d 187. However, cutting the work year from twelve to ten months "with the consequence of reducing annual compensation of retained personnel" was held to require negotiation. Piscataway Twp. Bd. of Educ. v. Piscataway Twp. Principals Assoc., 164 N.J.Super. 98, 101, 395 A.2d 880 (App.Div.1978).
Here, the employees' interest is the ability to earn augmented holiday pay while the employer's interest is controlling costs and determining staffing needs. Although Morris is not engaged in a reduction in force, which is a non-negotiable prerogative pursuant to In re Local 195, it is reducing staffing levels consistent with need on those thirteen annual holidays. Arguably, the McGrane Strategy would result in cutting the number of days that could potentially be worked by officers in those unneeded posts, with a potential decrease in those officers' gross annual compensation. However, those officers would still enjoy the same number of paid holidays and the work schedule is not being truncated, as those officers are simply given a paid day off, but without the premium associated with showing up to dodge work.
*222 Here, the decision not to staff positions which have no function on holidays is a managerial prerogative because it implicates the essential duty of government to "spend public funds wisely." Caldwell-West Caldwell Educ. Ass'n v. Caldwell-West Caldwell Bd. of Educ., 180 N.J.Super. 440, 452, 435 A.2d 562 (App.Div.1981). Undersheriff McGrane's certification attested to this policy, and the motives for the policy were not disputed by the evidence presented at summary judgment. Furthermore, the avoidance of featherbedding and make-work assignments is a "governmental policy determination" because it furthers efficient allocation of resources. See Paterson Police PBA Local No. 1 v. Paterson, 87 N.J. 78, 98, 432 A.2d 847 (1981) (holding "[m]unicipal decisions about how to organize and deploy ... police forces to comply with economic needs are unquestionably policy decisions and affect the public welfare"); Borough of Atl. Highlands v. Atl. Highlands PBA Local 242, 192 N.J.Super. 71, 75, 469 A.2d 80 (App.Div.1983) (finding police scheduling plan non-negotiable as matter of governmental policy where employer asserted plan provided "the most efficient utilization of its existing manpower, permitting maintenance of satisfactory around-the-clock police protection at an efficient cost level"), certif. denied, 96 N.J. 293, 475 A.2d 588 (1984).
We recognize that "the lines between the negotiable and the nonnegotiable are so nebulous ... each case must be decided upon its own particular facts on a case-by-case basis." Irvington Policemen's Benevolent Ass'n, Local No. 29 v. Town of Irvington, 170 N.J.Super. 539, 544, 407 A.2d 377 (App.Div.1979), certif. denied, 82 N.J. 296, 412 A.2d 801 (1980). We further adhere to the admonition that the determination of whether something is mandatorily negotiable or non-negotiable "must be fine tuned to the details of each case." In re Mt. Laurel, 215 N.J.Super. 108, 114, 521 A.2d 369 (App.Div.1987). In this light, nevertheless, we are convinced that the elimination of a palpably wasteful practice by the McGrane Strategy is firmly within the orbit of the Sheriff's fundamental policy-making authority and need not be the subject of collective negotiations.
Our focus is upon the fact-specific practice that Morris and the PBAthrough their CNAhad validated: a systemized custom of allowing MCCF employees to enjoy premium pay for essentially doing very little work on holidays. Upon the implementation of the McGrane Strategy, those affected employees will still be paid for each of the CNA's enumerated holidays, but they will no longer be permitted to dictate a bonus by insisting upon reporting for a holiday sinecure.
In conclusion, because scheduling and assignment-setting to avoid non-operational posts is a managerial prerogative involving staffing determinations and is intimately linked to the conservation of the public fisc, it is not mandatorily negotiable. Given that it is non-negotiable, issuance of the McGrane Strategy during interest arbitration proceedings did not contravene N.J.S.A. 34:13A-21 in violation of N.J.S.A. 34:13A-5.4(a)(5). Accordingly, PERC erred in granting summary judgment in favor of the PBA finding that Morris had committed an unfair labor practice. Moreover, PERC should have granted Morris summary judgment and dismissed the complaint.
Reversed.