**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1845-19

IN THE MATTER OF BOROUGH
OF CARTERET,

     Petitioner-Appellant,

and

FMBA LOCAL 67,

     Respondent-Respondent.

_____

Argued February 22, 2021 – Decided April 22, 2021

Before Judges Sabatino, Currier and DeAlmeida.

On appeal from the New Jersey Public Employment Relations Commission, PERC No. 2020-23.

Gregory J. Hazley argued the cause for appellant Borough of Carteret (Decotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; Gregory J. Hazley and Susan E. Volkert, of counsel and on the briefs; Ashanti M. Bess, on the briefs).

Raymond G. Heineman argued the cause for respondent FMBA Local 67 (Kroll Heineman Carton, LLC, attorneys; Raymond G. Heineman, of counsel and on the brief).

John A. Boppert, Deputy General Counsel, argued the cause for respondent New Jersey Public Employment Relations Commission (Christine Lucarelli, General Counsel, attorney; John A. Boppert, on the statement in lieu of brief).

PER CURIAM

In this matter arising out of a labor relations dispute, the Fireman's Mutual Benevolent Association, Local 67 (FMBA) sought arbitration of a grievance contesting the failure of the Borough of Carteret Fire Department (Borough) to reschedule two probationary firefighters from a daytime, weekly work schedule to twenty-four hour shifts following the completion of their fire fighter training. The Borough filed a scope of negotiations petition with the Public Employment Relations Commission (PERC), seeking an order restraining arbitration. After reviewing briefs, exhibits, and certifications from FMBA's president and the Borough fire chief, PERC concluded the grievance was mandatorily negotiable and denied the Borough's petition. We affirm.

I.

The Borough is a public employer under the New Jersey Public Employer-Employee Relations Act, N.J.S.A. 34:13A-1 to -49. FMBA is the "exclusive representative and bargaining agent" for "all fire personnel . . . excluding the Fire Chief." The Borough and FMBA are parties to a collective negotiation

agreement (CNA).[1]  Under the CNA, FMBA has the "right to negotiate as to rates of pay, hours of work, fringe benefits, working conditions, safety of equipment, procedures for adjustments of disputes and grievances and all other related matters."

The CNA states "[t]he work week for all employees of the Fire Department who perform firefighting duties shall be what is commonly known as the '24-72 system.'" (emphasis added).  Under this schedule, firefighters work twenty-four consecutive hours, followed by seventy-two consecutive hours off-duty.  Employees can also be assigned to a relief shift, and these employees "shall not work more than [forty-eight] hours or less than [twenty-four] hours in any week."  The CNA also provides that department employees can be assigned to the Bureau of Fire Safety (Bureau) and work "four days a week, nine hours a day, on a Monday through Friday basis."

The CNA mandates that rookie firefighters complete a twelve-month term of probationary service.  No firefighting position is deemed final or permanent until a firefighter completes the probationary term.  The Borough may terminate

---

[1]  During oral argument, counsel advised the CNA at issue has since expired and the parties were in current negotiations regarding a new agreement.

A-1845-19

the employment of a probationary firefighter if the Borough deems the employee unfit for permanent employment.

After graduating from the Fire Academy, the two probationary firefighters were assigned to the Bureau shift by the Fire Chief. FMBA grieved the assignment, contending the probationary firefighters should be assigned to the 24-72 schedule followed by all the other firefighters. FMBA sought binding arbitration of the issue.

In seeking a restraint of arbitration, the Borough argued that the "assignment of probationary firefighters to the daytime, weekly work schedule is not mandatorily negotiable . . . ." The Fire Chief contended it was his managerial prerogative, not a negotiable term, to determine a probationary firefighter's shift, as public safety was the most important factor in his decision-making process.

As stated, the parties provided certifications supporting their positions and presenting reasons for the assignments. The Fire Chief asserted the assignment to the Bureau shift allowed the probationary firefighters to complete their training at the Fire Academy and "work during daytime hours where they receive additional training, both in-house and other outside day-time schooling, and, importantly, are available for observation and evaluation by management . . .

4

[,]" including himself. He stated: "I will not re-assign probationary firefighters from the [Bureau] until I am certain they are not a danger to themselves or others."

FMBA's President, in response, argued that traditionally, probationary firefighters would complete their fire academy training and then receive six weeks of in-house training, where they would learn how to drive the department vehicles, use equipment on fire apparatus, and set up at an emergency scene. After six weeks, the Training Captain would evaluate the probationary firefighters over two twenty-four-hour shifts and give a recommendation as to the probationary firefighter's readiness to work on the 24-72 schedule.

However, here, since graduating the academy, the two probationary firefighters worked only on the Bureau schedule and were assigned as additional staffing on the fire apparatus, complementing firefighters working twenty-four-hour shifts. They had not been evaluated for or assigned to the 24-72 shift.

PERC issued its decision on November 26, 2020, finding "the grievance is mandatorily negotiable and legally arbitrable. The FMBA's claim relates to the determination of work schedules, which is a mandatorily negotiable issue absent evidence that such negotiations would substantively interfere with governmental policy making."

In support of its decision, PERC reasoned that "[e]ach of the firefighters at issue successfully completed basic firefighter training at the Fire Academy. The Chief certified that this qualified them to perform the duties of a firefighter. The phrase 'firefighting duties' appears only in Section 1 of Article III of the CNA, which establishes the 24[-]72 schedule." It concluded that "the Borough has not shown that negotiation over their work schedules would substantially interfere with government policy." PERC advised the Borough to raise its concerns about the probationary firefighters' readiness for the 24-72 schedule to the arbitrator.

## II.

The Borough raises the following issues on appeal:

> POINT I: PERC'S DECISION VIOLATES EXPRESS AND IMPLIED LEGISLATIVE POLICIES AND OTHERWISE FAILS TO FOLLOW THE LAW
>
> A. PERC Failed to Follow the Law as its Decision Violates Express and Implied Legislative Policies
>
> POINT II: PERC'S DETERMINATION TO DENY THE BOROUGH'S SCOPE OF NEGOTIATIONS PETITION WAS ARBITRARY, CAPRICIOUS, UNREASONABLE, AND UNSUPPORTED BY SUBSTANTIAL CREDIBLE EVIDENCE IN THE RECORD
>
> A. Policy and Managerial Prerogative Precludes Negotiation

6

B.    The    Record    Shows    Negotiation    Would
Substantially Interfere with the Borough's Policy and
Managerial Prerogative

C.    PERC's    Findings    are    Not    Supported    by
Substantial Evidence and the Facts Were Misapplied
and Misstated

The scope of our review is limited.  "PERC has primary jurisdiction to determine in the first instance whether a matter in dispute is within the scope of collective negotiations."  In re New Brunswick Mun. Emps. Ass'n, 453 N.J. Super. 408, 413 (App. Div. 2018) (citing N.J.S.A. 34:13A-5.4(d)).  The review of an administrative action is restricted to three inquiries:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency bases its action; and (3) whether, in applying the legislative policies to the facts, the agency erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Twp. of Franklin v. Franklin Twp. PBA Local 154, 424 N.J. Super. 369, 377 (App. Div. 2012) (citation omitted).]

Thus, "[i]n the absence of constitutional concerns or countervailing expressions of legislative intent, we apply a deferential standard of review to determinations made by PERC."  City of Jersey City v. Jersey City Police

7

Officers Benev. Ass'n., 154 N.J. 555, 567 (1998). PERC's decision "will stand unless it is clearly demonstrated to be arbitrary or capricious." In re Belleville Educ. Ass'n., 455 N.J. Super. 387, 400 (App. Div. 2018) (quoting Jersey City Police Officers Benev. Ass'n., 154 N.J. at 568). The party challenging the administrative action has the burden of demonstrating that it was arbitrary, capricious, and unreasonable. Bueno v. Bd. of Trs., Tchrs.' Pension & Annuity Fund, Div. of Pensions & Benefits, 404 N.J. Super. 119, 125 (App. Div. 2008).

On appeal, the Borough contends the Civil Service Act (CSA), N.J.S.A. 11A:1-1 to -12-6, as well as the CNA "reflect a period under which the Borough has the sole discretion to evaluate the readiness and competence of prospective firefighters." The Borough further asserts that PERC's decision "usurps management's evaluation of probationary firefighters[,]"disregards the "[CSA], is well beyond the scope of the [CNA][,] and [directly conflicts] with managerial prerogative." It argues that PERC's decision "interferes with (1) the managerial policy decision of qualification; (2) the particularized need to keep probationary firefighters on their assigned schedule until they are capable of performing their jobs with limited oversight; and (3) public safety. . . ." Thus, it contends PERC's decision failed to follow the law and violates express and implied legislative policies.

In response, FMBA argues that PERC did not usurp the Borough's power under the CNA, because arbitration "would not require the [a]rbitrator's assessment of the actual readiness of probationary firefighters or . . . whether they can satisfactorily perform the duties of a title."

Probationary public employees are subject to a "working test period" which allows an appointing authority "to determine whether an employee satisfactorily performs the duties of a title." N.J.S.A. 11A:4-15. Entry level firefighters are subject to a twelve-month working test period. N.J.S.A. 11A:4-15(a).

The Borough argues that the CNA and the working test period give it discretion when scheduling probationary firefighters. We disagree.

Although the working test period gives the Borough the discretion and ability to evaluate a firefighter and terminate the firefighter if he or she is unfit for appointment, it neither specifies on which shifts probationary firefighters must be scheduled, nor prohibits probationary firefighters from working on the 24-72 shift. It is clear the working test period does not give the Fire Chief discretion in scheduling probationary firefighters.

In addition, the Borough has not explained how arbitration of the scheduling dispute would frustrate the purpose of the working test period.

Although PERC's decision to arbitrate the dispute would give the arbitrator the power to determine the issue regarding probationary firefighter scheduling, it would not usurp the power of the Borough to terminate the probationary firefighter during the first twelve months of their employment. The Borough would continue to retain all of the power accorded it under the CNA.

Although the Borough argues the probationary firefighters must receive further training and instruction before they are assigned to the 24-72 shift, the probationary firefighters have completed the statutorily required training. When a firefighter completes the required training program and receives Firefighter I and Firefighter II certifications, that firefighter "may perform interior structural firefighting under direct supervision." N.J.A.C. 5:73-4.2(a)(1). In addition, "[f]ire departments shall be authorized to permit the firefighter . . . to respond to fire alarms, and under direct supervision, assist in all exterior firefighting operations." N.J.A.C. 5:73-4.2(c)(2)(ii).

Therefore, if the arbitrator were to schedule the probationary firefighters on the 24-72 shift, the firefighters would be legally qualified to perform the functions of the job, as they have completed the necessary training. See N.J.A.C. 5:73-4.2. In addition, the Borough would still retain the power to terminate the probationary firefighters. Therefore, the arbitration of

A-1845-19

probationary firefighters' individual work schedules neither undermines the Fire Chief's power to evaluate probationary firefighters, nor violates express or implied legislative policy.

The Borough further asserts that PERC erred in denying its scope of negotiations petition as negotiation would substantially interfere with its managerial prerogative. It also argues that PERC's decision was arbitrary and capricious.

We will reverse the decision of an administrative agency "only upon a finding that the decision is 'arbitrary, capricious or unreasonable,' or is unsupported by 'substantial credible evidence in the record as a whole.'" Blanchard v. N.J. Dep't of Corr., 461 N.J. Super. 231, 238 (App. Div. 2019) (quoting Henry v. Rahway State Prison, 81 N.J. 579-80 (1980)). "Substantial evidence has been defined . . . as 'such evidence as a reasonable mind might accept as adequate to support a conclusion,' and 'evidence furnishing a reasonable basis for the agency's action.'" Ibid. (quoting Figueroa v. N.J. Dep't of Corr., 414 N.J. Super. 186, 192 (App. Div. 2010)).

"[P]ublic employees have a legitimate interest in engaging in collective negotiations about issues that affect 'terms and conditions of employment.'" Local 195, IFPTE, AFL-CIO v. State, 88 N.J. 393, 401 (1982) (citing N.J.S.A.

34:13A-5.3).  "The central issue in a scope of negotiations determination is whether or not a particular subject matter is negotiable."  Ibid.

Subjects of public employment negotiation are separated into two distinct categories: those that are "'mandatorily negotiable terms and conditions of employment'" and those that are "'non-negotiable matters of governmental policy.'"  Borough of Keyport v. Int'l Union of Operating Eng'rs, 222 N.J. 314, 333 (2015) (citing Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 162 (1978)).  Disputes "concerning whether subjects are mandatorily negotiable should be made on a case-by-case basis."  Troy v. Rutgers, 168 N.J. 354, 383 (2001).

In negotiations between public employers and employees, a subject is negotiable when it satisfies a three-part test: "(1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy."  Robbinsville Twp. Bd. of Educ. v. Washington Twp. Educ. Ass'n, 227 N.J. 192, 199 (2016) (quoting Local 195, 88 N.J. at 403-04).

"PERC has primary jurisdiction to make a determination on the merits of . . . whether the subject matter of a particular dispute is within the scope of

collective negotiations." Ridgefield Park Ed. Ass'n, 78 N.J. at 154. "If PERC concludes that the dispute is within the legal scope of negotiability and agreement between the employer and employees, the matter may proceed to arbitration." Ibid.

"To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer." Local 195, 88 N.J. at 405. "When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions." Ibid.

Work schedules and hours of work are "prime examples" of subjects that "intimately and directly affect the work and welfare of public employees." Id. at 403-04 (citations omitted); see Twp. of Teaneck v. Teaneck Fireman's Mut. Benev. Ass'n Local No. 42, 353 N.J. Super. 289, 305 (App. Div. 2002) (stating that "work hours are a negotiable term and condition of employment for . . . firefighters"). A public employer must place facts on the record "in support of its need, from a policy making point of view," to "counterbalance the direct and intimate effect" work schedules have on employees. Twp. of Mt. Laurel v. Mt. Laurel Police Officers Ass'n., 215 N.J. Super. 108, 115 (App. Div. 1987).

A review of the record reflects the Borough has failed to explain how scheduling the probationary firefighters to the 24-72 shift would interfere with governmental policy, since they are being trained and "mentored" by firefighters working the 24-72 shift.

In addition, the CNA states "[t]he work week for all employees of the Fire Department who perform firefighting duties shall be what is commonly known as the '24-72 system.'" The probationary firefighters are classified as firefighters and therefore their proper work schedule is the 24-72 shift.

Having considered the Borough's arguments under our deferential standard of review, we affirm PERC's decision denying the Borough's petition. See Twp. of Franklin, 424 N.J. Super. at 377. The decision is supported by sufficient credible evidence on the record, and is neither arbitrary nor capricious. See Jersey City Police Officers Benev. Ass'n, 154 N.J. at 568.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1845-19