**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1303-20

TOWNSHIP OF EDISON,

    Plaintiff-Respondent,

v.

INTERNATIONAL
ASSOCIATION OF
FIREFIGHTERS, LOCAL 1197,

    Defendant-Appellant.

_____

Argued February 9, 2022 – Decided March 1, 2022

Before Judges Sumners and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000111-20.

Raymond G. Heineman argued the cause for appellant (Kroll, Heineman, Ptasiewicz & Parsons, LLC, attorneys; Raymond G. Heineman, on the briefs).

Matthew J. Giacobbe argued the cause for respondent (Cleary, Giacobbe, Alfieri & Jacobs, LLC, attorneys; Matthew J. Giacobbe, of counsel and on the brief; Jessica V. Henry, on the brief).

PER CURIAM

Defendant International Association of Firefighters Local 1197 (the Union) appeals from a November 19, 2020 Chancery Division order restraining arbitration of its grievance against plaintiff Township of Edison (the Township). For the reasons that follow, we affirm.

I.

The following facts are derived from the record. On May 4, 2020, the Township deployed sixteen firefighters to respond to a fire at a three-story apartment building. News reports provided by the Union indicate that eleven apartments were destroyed, rendering thirty-five people homeless. The reports also stated that several other fire departments aided the Township in its efforts to quell the blaze.

The Union and the Township are parties to a collective negotiations agreement (CNA), effective January 1, 2019, through December 31, 2022. Pertinent to this appeal, Article 8 of the CNA, titled, "Safety and Health," provides:

> The Township and the Union agree to cooperate to the fullest extent in the promotion of safety. Two (2) employees representing the Union and two (2) employees representing the Township shall comprise the safety and health committee. <u>The Township</u>

representatives shall be the Fire Chief and Deputy Chief or their designees. The committee will meet monthly and discuss safety and health conditions of the fire department. Both the Township and Union shall have the right to call additional meetings of the safety and health committee, which shall be held at a mutually agreed time. All recommendations shall be in writing and copies submitted to the Township and the Union. The two (2) employees representing the Union shall be granted time off to attend these meetings. (Emphasis added).

On May 8, 2020, the safety and health committee held a meeting pursuant to this article. The Union's president argued that the Township's staffing for the May 4, 2020 fire was unsafe. The Township's Fire Chief, Brian Latham, responded by advising that staffing levels are subject to managerial prerogative. Article 46, "Grievance Procedure," defines a grievance as "a claim either by an employee or by the Union that either an individual employee, group of employees or the Union has been harmed by either the interpretation or application of" "the terms and conditions of this agreement and other conditions of employment." With respect to grievance procedures, Article 46(B)(10) provides:

In the event of any unresolved grievances on the interpretation of this agreement, either party may submit to the Public Employees Relations Commission

3

[(PERC)][1] for the appointment of an impartial arbitrator in accordance with the Rules and Regulations. The arbitrator shall have the authority to hear and determine the grievance, and his [or her] decision shall be final and binding on both parties.

On May 11, 2020, the Union filed a grievance pursuant to Article 46 of the CNA alleging: (1) "[t]he Township has refused to staff the [f]ire [d]epartment with safe staffing as required by N[ational] F[ire] P[rotection] A[ssociation] #1710"; (2) "[t]he [T]ownship has reduced the minimum staffing from [twenty-two staff] to [eighteen] per shift, reducing staffing levels below what is needed to maintain safety on a fire ground"; (3) an unsafe number of staff reported to a fire on May 4, 2020; and (4) "[t]he unsafe staffing level was raised at the May 8, 2020 safety committee meeting but the committee [t]ook no action to remedy the unsafe staffing level."

---

[1] PERC is charged with administering the New Jersey Employer-Employee Relations Act, N.J.S.A. 34:13A-5.2, and has primary jurisdiction to determine "whether the subject matter of a particular dispute is within the scope of collective negotiations." Ridgefield Park Educ. Ass'n v. Ridgefield Park Bd. of Educ., 78 N.J. 144, 155 (1978) (citing N.J.S.A. 34:13A-5.4(d)). PERC's role is to make a threshold determination of whether the disputed matter is something the parties can legally negotiate and make subject to arbitration. N.J.S.A. 34:13A-5.4(d). PERC may not interpret contract; "contract interpretation is a question for judicial resolution." Ridgefield Park Educ. Ass'n, 78 N.J. at 155.

On May 15, 2020, the Township's Fire Chief denied the Union's grievance. Fire Chief Latham first concluded that the issue of staff reduction had already been litigated in the United States District Court for the District of New Jersey[2] and the Superior Court of New Jersey.[3] He also determined that under precedent established by PERC: (1) "public employers are no[t] required to negotiate about overall staffing levels, or how many firefighters or fire officers will be on duty at a particular time"; (2) an "employer has a managerial prerogative to operate under minimum staffing levels"; and (3) "the quality and quantity of fire protection that a municipality elects to provide is an essential employer determination which is not subject to the mandatory duty to negotiate."

On May 29, 2020, the Union submitted its grievance to arbitration before PERC, requesting as a remedy "that the Township recognize that the staffing levels are unsafe and send the issue back to the contractual [s]afety [c]ommittee to make recommendations." The Union posited the safety and health committee "[t]ook no action to remedy the unsafe staffing level," and "there should have

---

[2] Int'l Ass'n of Firefighters, Loc. 1197 v. Twp. of Edison, No. 2:12-cv-00560 (WJM), 2013 U.S. Dist. LEXIS 13130 (D.N.J. Jan. 31, 2013).

[3] Int'l Ass'n of Firefighters, Loc. 1197 v. Twp. of Edison, No. Mid-L-8076-10 (Law Div. Oct. 29, 2010).

been approximately [forty] firefighters on the scene or backfill fire stations with spare apparatus." On June 18, 2020, PERC appointed an arbitrator.

Thereafter, the Township filed a complaint and an order to show cause (OTSC) in the Chancery Division on July 21, 2020, seeking to restrain arbitration of the Union's grievance. At the OTSC hearing held on August 24, 2020, the Township objected to the arbitration on substantive arbitrability grounds, arguing that under precedent from our Supreme Court, the level of staffing decision is not subject to arbitration. The Union agreed it was "not allowed" to seek a change in staffing levels, but instead sought a "declaratory judgment" from an arbitrator stating the staffing level at the May 4, 2020 fire was unsafe. The Union also sought to "hold the Town[ship] accountable" by going to the "Town Council," "the public," and "those newspapers that reported how wonderful [the May 4, 2020] response was" and indicate the staffing levels were unsafe.

At the conclusion of the parties' arguments, the following colloquy took place:

> THE COURT: Okay. Mr. Heineman, (indiscernible) agree with Mr. Giacobbe. I don't think that substantively the arbitrator can do anything frankly.
>
> MR. HEINEMAN: I'm sorry, Your Honor. I—I did not hear what you said.

6

> THE COURT: I'm afraid I (indiscernible) to agree with Mr. Giacobbe on that issue. I don't think it's a substantive issue. I think—(indiscernible) remedy of declaring the staffing levels unsafe (indiscernible). I'm going to grant the injunction.

The judge did not enter a memorializing order that day.

At some point after the hearing, another judge was assigned the matter and entered an order on the OTSC on November 19, 2020, granting the Township's application to restrain the arbitration. The order indicated, "THE COURT FINDINGS OF FACT AND CONCLUSIONS OF LAW WERE PLACED ON THE RECORD IN OPEN COURT ON August 24, 2020." This appeal followed.

## II.

The Union now asserts on appeal: (1) its grievance is substantively arbitrable under the arbitration provision of the CNA; (2) the issue of arbitrability is within the exclusive jurisdiction of PERC; and (3) the arbitration submission is within the scope of mandatory negotiations and within the jurisdiction of the arbitrator. The Township, on the other hand, contends the CNA neither governs the issue of staffing levels nor subjects the issue to arbitration, and the Union's claim is barred by the doctrine of res judicata.

A-1303-20

Generally, a trial court's decision pertaining to injunctive relief is reviewed for an abuse of discretion. Stoney v. Maple Shade Twp., 426 N.J. Super. 297, 307 (App. Div. 2012). However, appellate review is de novo where the disputed issue relating to the injunctive relief is a question of law. Ibid. Regarding arbitration agreements, "[w]e exercise plenary review of the trial court's decision regarding the applicability and scope of" the agreement. Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super. 464, 472 (App. Div. 2015). Moreover, whether PERC "jurisdiction exists presents a purely legal issue, which [an appellate court] review[s] de novo." See Santiago v. N.Y. & N.J. Port Auth., 429 N.J. Super. 150, 156 (App. Div. 2012) (citation omitted).

We first consider whether the Union's grievance is substantively arbitrable under the CNA. The judiciary's role in determining substantive arbitrability has been explained this way:

> When one party claims that a given dispute is arbitrable under the contract and the other party resists arbitration, the party desiring arbitration should seek an order from the Superior Court compelling arbitration. Where the trial judge determines that the real controversy is not one of contractual arbitrability, but rather concerns the propriety of the parties negotiating and agreeing on the item in dispute, he [or she] should refrain from passing on the merits of that issue.
>
> [Ridgefield Park Educ. Ass'n, 78 N.J. at 153-54 (citation omitted).]

That is, it is the court's function to determine whether the CNA involves a matter the parties agreed to arbitrate. In large part, "[t]he scope of arbitrability is generally coextensive with the scope of negotiability." Teaneck Bd. of Educ. v. Teaneck Tchrs. Ass'n., 94 N.J. 9, 14 (1983) (citing Ridgefield Park Educ. Ass'n., 78 N.J. at 160).

> In public-sector collective negotiations, employment issues fall into one of two categories: "'mandatorily negotiable terms and conditions of employment' and 'non-negotiable matters of governmental policy.'" A three-part test applies in determining whether an issue is negotiable:
>
> > [A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.

9

[Off. of Emp. Rels. v. Commc'ns Workers, 154 N.J. 98, 113 (1998) (alteration in original) (first quoting Teaneck Bd. of Educ., 94 N.J. at 14; and then quoting Loc. 195 v. State, 88 N.J. 393, 404-05 (1982)).]

See also Borough of Keyport v. Int'l Union of Operating Eng'rs. Loc. 68, 222 N.J. 314, 334-35 (2015) (reaffirming three-part test announced in Local 195).

Arbitrability is separated into "two categories: 'substantive' arbitrability and 'procedural' arbitrability." Amalgamated Transit Union, Loc. 880 v. N.J. Transit Bus Operations, Inc., 200 N.J. 105, 115 (2009) (citing Standard Motor Freight, Inc. v. Loc. Union No. 560, 49 N.J. 83, 96-97 (1967)). "[S]ubstantive arbitrability relates to whether the particular grievance is within the scope of the arbitration clause specifying what the parties have agreed to arbitrate while procedural arbitrability refers to whether procedural conditions to arbitration have been met." Id. at 112-13 (internal quotations omitted) (quoting Standard Motor Freight, Inc., 49 N.J. at 96, 97). "To determine a question about substantive arbitrability, a court need only decide 'whether the party seeking arbitration is making a claim which on its face is governed by the [CNA].'" Id. at 115 (quoting Standard Motor Freight, Inc., 49 N.J. at 96).

Here, the Union contends its grievance presented a substantively arbitrable issue of contract interpretation, namely, that the deployment of sixteen

firefighters to the May 4, 2020 fire was contrary to the requirement of Article 8 of the CNA, which requires the parties "to cooperate to the fullest extent in the promotion of safety." Moreover, the Union asserts that the absence of a management rights clause or a clause expressly restricting the arbitration of safety disputes is indicative of the parties' intent to settle grievances related to safety conditions arising from staffing levels. We are unpersuaded by these arguments.

The language of the CNA expressly provides for arbitration of a limited number of grievances, restricting it to those grievances concerning the "interpretation" and "application" of the CNA. Specifically, Article 46 provides:

> (9) It is understood that the Employer may file a grievance <u>concerning the interpretation and application of this agreement</u>, which, if said grievance cannot amicably be resolved through negotiations with the Union and the Employer's representatives, <u>shall be submitted to arbitration</u> pursuant to paragraph nine (9) of this article.
>
> (10) In the event of any unresolved grievances <u>on the interpretation of this agreement</u>, either party may submit to [PERC] for the appointment of an impartial arbitrator in accordance with the Rules and Regulations. The arbitrator shall have the authority to hear and determine the grievance, and his decision shall be final and binding on both parties.
>
> [(Emphases added).]

11

Additionally, grievances are limited to harms resulting from "the interpretation or application of the terms and conditions of [the CNA] and other conditions of employment" and the interpretation or application of Employer Fire Department Rules and Regulations as have heretofore been adopted or as may in the future be duly adopted. Therefore, according to the terms of the CNA, the Union may only arbitrate grievances pertaining to stipulations contained within that document.

We also reject the Union's argument that its grievance "requires the interpretation by an arbitrator of Article 8," which states the parties must "cooperate to the fullest extent in the promotion of safety" because this argument is predicated on a piecemeal reading of Article 8. When read in context and in its entirety, Article 8 does not provide for a mechanism for disputing safe staffing levels. See Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 188 (2013). Rather, it establishes a committee tasked with "meet[ing] monthly," "discuss[ing] safety and health conditions of the fire department," and submitting written recommendations to the Township and the Union. In fact, the record shows this committee was convened after the May 4, 2020 fire and chose not to take further action.

The Union acknowledges the safety committee cannot impose staffing levels but argues it "should at least make recommendations with the knowledge that the conditions at the fire scene on May 4, 2020[,] violated Article 8." In support of its argument, the Union relies on PERC decisions, which are not binding on this court.[4]

Article 8 lacks clear and unambiguous language indicating that staffing levels are subject to arbitration. See Knight v. Vivint Solar Dev., LLC, 465 N.J. Super. 416, 425-26 (App. Div. 2020) ("[A]ny contractual waiver of rights, including arbitration provisions, must reflect that the parties have clearly and unambiguously agreed to the terms."). Therefore, as a matter of contract law, the Township "cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit." Amalgamated Transit Union, 200 N.J. at 115 (quoting Standard Motor Freight, Inc. v. Loc. Union No. 560, Int'l Brotherhood of Teamsters, 49 N.J. 83, 96 (1976)).

A contrary reading of Article 8 would vest an arbitrator with authority in excess of that contemplated by the parties in the agreement, Loc. No. 153, Off.

---

[4] See In re Ridgefield Park Bd. of Educ., 244 N.J. 1, 17 (2020) (holding "when an agency's decision is based on the agency's interpretation of a statute or its determination of a strictly legal issue, [appellate courts] are not bound by the agency's interpretation") (internal quotation marks omitted).

A-1303-20

& Pro. Emps. Intern. Union v. Tr. Co. of N.J., 105 N.J. 442, 450 (1987), and would have amounted to the trial court impermissibly rewriting the CNA to broaden the scope of arbitration, Hirsch, 215 N.J. at 188. Consequently, the Union has failed to show that its grievance, on its face, is governed by the CNA, and therefore, the issue is not substantively arbitrable. Amalgamated Transit Union, 200 N.J. at 115.

Our conclusion is grounded on well-settled precepts. "The duty to arbitrate springs from contract, and the parties can only be compelled to arbitrate those matters which are within the scope of the arbitration clause of their contract." Clifton Bd. of Educ. v. Clifton Tchrs. Ass'n, 154 N.J. Super. 500, 503 (App. Div. 1977); see also Angrisani v. Fin. Tech. Ventures, L.P., 402 N.J. Super. 138, 148-49 (App. Div. 2008) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he [or she] has not agreed so to submit." (quoting AT&T Techs. v. Commc'n Workers of Am., 475 U.S. 643, 648 (1886))). Absent a clear expression in the contract, the determination of whether the stated grievance falls within the scope of arbitration rests with the court. Amalgamated Transit Union, 200 N.J. at 115. Here, we cannot permit PERC to arbitrate the Union's grievance because we

14

conclude it is not substantively arbitrable under the arbitration provision of this CNA.

## III.

Despite the fact that the staffing issue is not substantively arbitrable, the Union also argues the Township's motion was improperly raised before the trial court because N.J.S.A. 34:13A-5.4(d) vests PERC with exclusive jurisdiction "to make a determination as to whether a matter in dispute is within the scope of collective negotiations." The Township counters, contending that staffing levels are a managerial prerogative and consequently are not subject to arbitration.

Public employees are constitutionally entitled to engage in collective negotiations. N.J. Const., art. I, ¶ 19; Council of N.J. State Coll. Locs. v. State Bd. of Higher Educ., 91 N.J. 18, 26 (1982). In the public sector, the issues which "may be submitted to binding arbitration . . . [are] circumscribed." Teaneck Bd. of Educ., 94 N.J. at 13 (quoting Kearny PBA Loc. #21 v. Town of Kearny, 81 N.J. 208, 215 (1979)). "[P]rerogatives of management, particularly those involving governmental policy making, cannot be bargained away to be determined by an arbitrator." Ibid. (quoting Kearny PBA Loc. #21, 81 N.J. at 215). "To be arbitrable, a matter must qualify as one on which the parties may

A-1303-20

negotiate. A matter which is not legally negotiable in the first place cannot be arbitrable." Ridgefield Park Educ. Ass'n, 78 N.J. at 160. As a result, "[t]he scope of arbitrability is generally coextensive with the scope of negotiability." Teaneck Bd. of Educ., 94 N.J. at 14.

Our Court has established a three-part test for determining whether a subject is negotiable:

> [A] subject is negotiable between public employers and employees when (1) the item intimately and directly affects the work and welfare of public employees; (2) the subject has not been fully or partially preempted by statute or regulation; and (3) a negotiated agreement would not significantly interfere with the determination of governmental policy. To decide whether a negotiated agreement would significantly interfere with the determination of governmental policy, it is necessary to balance the interests of the public employees and the public employer. When the dominant concern is the government's managerial prerogative to determine policy, a subject may not be included in collective negotiations even though it may intimately affect employees' working conditions.
>
> [Loc. 195, 88 N.J. at 404-05.]

This test must be applied on a case-by-case basis. Troy v. Rutgers, 168 N.J. 354, 383 (2001).

Our Court has pronounced that public employers have a non-negotiable, managerial prerogative to determine the staffing levels necessary for the

16

efficient delivery of governmental services. See e.g., Paterson Police PBA Loc. No. 1 v. City of Paterson, 87 N.J. 78, 97 (1981) (quoting City of Atl. City v. Laezza, 80 N.J. 255, 267 (1979) ("Municipal officials retain discretion to diminish the size of the work force and limit the areas in which personnel will be deployed, inasmuch as these decisions 'unquestionably [are] predominantly managerial function[s]' which cannot be delegated to an arbitrator not accountable to the public at large.") (alterations in original) (quoting State v. State Supervisory Emps. Ass'n, 78 N.J. 54, 88 (1978))); City of Jersey City v. Jersey City Police Officers Benevolent Ass'n, 154 N.J. 555, 573-74 (1998) (holding the city's decision to reassign the duties of police officers is a non-negotiable managerial prerogative); Morris Cnty. Sheriff's Off. v. Morris Cnty. Policemen's Benevolent Ass'n, Loc. 298, 418 N.J. Super. 64, 78 (App. Div. 2011) (finding that "the decision not to staff positions which have no function on holidays is a managerial prerogative because it implicates the essential duty of government 'to spend public funds wisely'" (quoting Caldwell-W.Caldwell Educ. Ass'n v. Caldwell-W.Caldwell Bd. of Educ., 180 N.J. Super. 440, 452 (App. Div. 1981))); Irvington Policemen's Benevolent Ass'n, Local No. 29 v. Town of Irvington, 170 N.J. Super. 539, 546 (App. Div. 1979) (finding the change of shift as directed by the town through its police chief to be non-

17                                                                    A-1303-20

negotiable because "[i]t would confer upon an arbitrator . . . the decision[,] which rightfully belongs to the town").

By framing the issue at bar in terms of safety, the Union attempts to characterize the requested arbitration as beyond the scope of the Township's managerial prerogative. However, in light of the above precedent, the declaratory judgment which the Union seeks from an arbitrator would effectively "delegate government policymaking to an individual who is not accountable to the public at large." Bd. of Educ. of Bernards Twp. v. Bernards Twp. Bd. of Educ. Ass'n, 79 N.J. 311, 322 (1979). It also infringes on a managerial prerogative that falls squarely within the Township's authority. Therefore, we conclude the issue of the fire department's staffing level is non-arbitrable.

## IV.

On appeal, the Township resurrects its contention that the Union's claim is barred by res judicata. In light of our decision, we need not address this argument. However, we add the following brief remarks.

Res judicata or claim preclusion "contemplates that when a controversy between parties is once fairly litigated and determined it is no longer open to relitigation." Adelman v. BSI Fin. Servs., Inc., 453 N.J. Super. 31, 39 (App.

Div. 2018) (quoting Lubliner v. Bd. of Alcoholic Beverage Control for Paterson, 33 N.J. 428, 435 (1960)).  It applies when a party seeking to apply the doctrine establishes: (1) a valid judgment on the merits was entered on the claim in a prior action; "(2) the parties in the later action [are] identical or in privity with those in the prior action; and (3) the claim in the later action[s] [arose] out of the same transaction or occurrence as the claim in the earlier case."  Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991).  "The application of res judicata . . . requires substantially similar or identical causes of action and issues, parties, and relief sought."  Walker v. Choudhary, 425 N.J. Super. 135, 151 (App. Div. 2012) (quoting Culver v. Ins. Co. of N. Am., 115 N.J. 451, 460 (1989)).  "To be accorded res judicata effect, a judicial decision 'must be a valid and final adjudication on the merits of the claim.'"  Id. at 150 (quoting Velasquez v. Franz, 123 N.J. 498, 505 (1991)).

"Collateral estoppel . . . represents the 'branch of broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of action.'"  Tarus v. Borough of Pine Hill, 189 N.J. 497, 520 (2007) (emphasis added) (quoting Sacharow v. Sacharow, 177 N.J. 62, 76 (2003)).  "Although collateral estoppel overlaps with and is closely related to res judicata,

the distinguishing feature of collateral estoppel is that it alone bars relitigation of issues in suits that arise from different causes of action." Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000). For collateral estoppel or issue preclusion to apply, the party asserting the bar must first show:

> (1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or was in privity with a party to the earlier proceeding.
>
> [Olivieri v. Y.M.F. Carpet, Inc., 186 N.J. 511, 521 (2006) (quoting In re Est. of Dawson, 136 N.J. 1, 20-21 (1994)).]

Here, the Township alleges both issue preclusion and claim preclusion warranted the November 19, 2020 order enjoining arbitration on the issue of the staffing level relative to the May 4, 2020 fire. However, the two cases cited by the Township in its brief do not concern the same underlying issue. The Union's grievance in this case does not challenge the 2010 reduction in minimum staffing levels considered by the trial court in an unpublished 2010 trial court decision or the International Association of Firefighters, Local 1197 v. Township of

Edison, federal court decision.[5]  Rather, the Union's grievance seeks a declaratory judgment stating whether the Township violated Article 8 of the CNA by sending an unsafe number of firefighters to combat the May 4, 2020 fire.  Therefore, the Union's grievance is not barred by res judicata or collateral estoppel for purposes of our review of this appeal.

We would be remiss if we did not comment on the lack of Rule 1:7-4 findings of fact and conclusions of law on this record.  In every case decided by a court, it must make specific findings of fact and conclusions of law.  R. 1:7-4(a); see, e.g., Shulas v. Estabrook, 385 N.J. Super. 91, 96 (App. Div. 2006).  "Failure to make explicit findings and clear statements of reasoning [impedes meaningful appellate review and] 'constitutes a disservice to the litigants, the attorneys, and the appellate court.'"  Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Curtis v. Finneran, 83 N.J. 563, 569-70 (1980)). These deficiencies, however, do not preclude our conclusion that the order restraining arbitration should be affirmed.  And, entry of the order on the OTSC should not have been

---

[5]  "No unpublished opinion shall constitute precedent or be binding upon any court."  R. 1:36-3. Unreported decisions "serve no precedential value, and cannot reliably be considered part of our common law." Trinity Cemetery Ass'n v. Twp. of Wall, 170 N.J. 39, 48 (2001) (Verniero, J., concurring).

delayed for almost four months even in the face of a different judge taking over the matter.

Any arguments we did not specifically address lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION